**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

**CASE NO:**

KYLE EGGNATZ, and
all others similarly situated under
*29 U.S.C. 216(b),*

      Plaintiff(s),

      v.

COVENTBRIDGE (USA) INC. d/b/a
COVENTBRIDGE GROUP, a foreign
For-profit corporation, DAVID MERRILL,
individually, and JIM FRANCIS, individually,

      Defendants.

_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

    Plaintiff, KYLE EGGNATZ ("Plaintiff"), pursuant to *29 U.S.C. § 216(b)*, files the following Complaint against Defendants, COVENTBRIDGE (USA) INC. d/b/a COVENTBRIDGE GROUP ("COVENTBRIDGE"), DAVID MERRILL ("MERRILL") individually, and JIM FRANCIS ("FRANCIS") individually (collectively referred to hereinafter as "Defendants"), on behalf of himself, and all others similarly situated, and alleges:

**INTRODUCTION**

    1.    This is a collective action arising under the Fair Labor Standards Act ("FLSA") pursuant to *29 U.S.C. §§ 201-216*, to seek redress of Defendants' violations of the FLSA against this Plaintiff, and all other employees similarly situated, during the course of their employment.

**PARTIES**

    2.    During all times material hereto, Plaintiff was a resident of Broward County, Florida, over the age of 18 years, and otherwise *sui juris*.

3.      Plaintiff, and all putative class members, worked for COVENTBRIDGE in one or more of the following locations within the past three years: Miami-Dade County, Broward County, Palm Beach County, Monroe County, and elsewhere throughout the State of Florida.

4.      Defendant, COVENTBRIDGE, is a Delaware corporation, registered and authorized to do business in the State of Florida, with a principal place of business at 9485 Regency Square Blvd. Suite 200, Jacksonville, Florida, 32225.  COVENTBRIDGE also operates and engages in business throughout the State of Florida, including within the jurisdiction of this Honorable Court.

5.      During all times material hereto, Defendant, MERRILL, was over the age of 18 years, a corporate officer of COVENTBRIDGE, and was vested with the authority to hire, fire, and discipline, any and all COVENTBRIDGE employees, including Plaintiff.  More specifically, Defendant, MERRILL, acted as the Chief Executive Officer for COVENTBRIDGE, which regularly engages in business within this judicial district.

6.      Furthermore, during all times material hereto, Defendant, MERRILL, was vested with the authority to approve the payroll practices for COVENTBRIDGE, including the rates and treatment of Plaintiff and all similarly situated employees. Upon information and belief, Defendant, MERRILL also maintained and exercised day-to-day decision-making decision authority on matters of significance for the corporate Defendant.

7.      During all times material hereto, Defendant, FRANCIS, was over the age of 18 years, a manager of COVENTBRIDGE, and was vested with the authority to hire, fire, and discipline, any and all COVENTBRIDGE employees, including Plaintiff.  Furthermore, during all times material hereto, Defendant, FRANCIS, participated in determining and administering the payroll practices for COVENTBRIDGE, including the issuance of paychecks for Plaintiff and all

similarly situated employees. Upon information and belief, Defendant, FRANCIS was Plaintiff, and similarly situated employees' direct supervisor during all pertinent time periods.

8.      Defendant, COVENTBRIDGE, was Plaintiff's joint employer, as defined by *29 U.S.C. § 203(d)*, during all times pertinent to the allegations herein.[1]  COVENTBRIDGE supervised Plaintiff, determined company payroll decisions, and maintained the right to hire and fire Plaintiff during all pertinent times hereto.

9.      Defendant, MERRILL, was Plaintiff's joint employer, as defined by *29 U.S.C. § 203(d)*, during all times pertinent to the allegations herein.  MERRILL was a corporate officer of the corporate Defendant, supervised Plaintiff, determined company payroll decisions, and maintained the right to hire and fire Plaintiff and all similarly situated employees during all pertinent times hereto.

10.     Defendant, FRANCIS, was Plaintiff's joint employer, as defined by *29 U.S.C. § 203(d)*, during all times pertinent to the allegations herein.  FRANCIS supervised Plaintiff and all similarly situated employees, directed Plaintiff's job assignments, determined company payroll decisions, and maintained the right to hire and fire Plaintiff during all pertinent times hereto.

11.     During all times pertinent hereto, Plaintiff was dependent upon Defendants, COVENTBRIDGE, MERRILL, and FRANCIS, for his employment, as these Defendants collectively supervised, directed, and controlled Plaintiff's day-to-day responsibilities, and used Plaintiff's work in furtherance of their business objectives.

## JURISDICTION AND VENUE

12.     All acts and omissions giving rise to this dispute took place in Florida, which falls within the jurisdiction of this Honorable Court.

---

1.      *See, e.g.,* Antenor v. D&S Farms, 88 F.3d 925, 929 (11th Cir. 1996) *citing 29 C.F.R. § 500.20(h)(4)(l).*

13.     Jurisdiction is proper within the Southern District of Florida pursuant to *29 U.S.C. § 216(b)* and *28 U.S.C. §§ 1331* and *1337*.

14.     Venue is proper within the Southern District of Florida pursuant to *29 U.S.C. § 216(b)* and *28 U.S.C. § 1391(b)*.

## CLASS ALLEGATIONS

15.     Plaintiff, EGGNATZ, seeks each class members' rightful and proper overtime wages, which would be half-time not paid for all hours over forty (40) actually worked in each workweek within the past three (3) years, an equal amount in liquidated damages, judgment, attorney's fees and costs.

16.     Defendant, COVENTBRIDGE, employs and has employed within the past three (3) years "Field Investigators" in Miami-Dade County, Broward County, Palm Beach County, Monroe County, and elsewhere throughout the State of Florida.

17.     Defendant, COVENTBRIDGE, uniformly treats and classifies its "Field Investigator" as employees in its Florida offices as it relates to the payment of wages and overtime.

18.     Plaintiff, EGGNATZ, and the class members performed the same or similar job duties as one another in that they worked as "Field Investigator" employees of COVENTBRIDGE within the past three (3) years without receiving proper overtime pay for hours in excess of forty (40) per week.  EGGNATZ and the class members were subjected to the same pay provisions in that they suffered or were permitted to work overtime but not properly paid at the correct rate for all hours worked.  Thus, the class members are owed overtime wages for the same reasons as EGGNATZ.

19.     Defendant, COVENTBRIDGE'S failure to compensate employees for all overtime wages as required by the FLSA results from a uniform pay policy or practice that fails to assure payment of overtime in accordance with the FLSA.  This policy or practice was applicable to

EGGNATZ and the class members.  Application of this policy or practice does not depend on the personal circumstances of EGGNATZ or those joining this lawsuit.  Rather, the same policy or practice which resulted in the non-payment of overtime for hours over forty (40) to EGGNATZ applies to all class members.  Accordingly, the class members are properly defined as: all "Field Investigator" employees who worked for COVENTBRIDGE during anytime within the previous three (3) years of this complaint in Miami-Dade County, Broward County, Palm Beach County, Monroe County, and elsewhere throughout the State of Florida, and who were not paid for all overtime worked at the correct rate.

<u>**GENERAL ALLEGATIONS**</u>

20.     Defendant, COVENTBRIDGE, is a full service investigative firm that provides surveillance, compliance, claims investigation, counter-fraud, social media, record retrieval, and vendor management programs throughout the United States and the United Kingdom.

21.     Upon information and belief, COVENTBRIDGE, and its parent corporation, CoventBridge Group, Ltd., employ over one thousand (1,000) individuals worldwide.

22.     Plaintiff, and all similarly situated employees, were hired by COVENTBRIDGE and assigned the title of "Field Investigator" to perform investigation services during all relevant time periods hereto in Miami-Dade County, Broward County, Palm Beach County, and Monroe County.

<u>**FLSA Coverage**</u>

23.     During all times material hereto, COVENTBRIDGE was covered under the FLSA through enterprise coverage, as COVENTBRIDGE was engaged in interstate commerce during all time periods in which Plaintiff, and all similarly situated individuals, were employed.  More specifically, during all times material hereto, COVENTBRIDGE employed at least two (2) or more employees who regularly handled goods and/or materials on a constant and/or continuous basis

that traveled across state lines, including, but not limited to the following: cellular telephones, computer equipment, video cameras, notepads, automobiles, paper, office supplies, pens, office chairs, printers, and other office materials.

24.     Plaintiff's work for all Defendants was actually in or so closely related to the movement of commerce while he worked for Defendants that Plaintiff, and all similarly situated employees, are covered under the FLSA through individual coverage.  Plaintiff, and all similarly situated employees, regularly and recurrently used the instrumentalities of interstate commerce in furtherance of their work.  More specifically, Plaintiff regularly performed functions with clients across state lines utilizing telephones, computers, machinery, materials, and supplies.  During all times pertinent to his employment, Plaintiff was required to regularly and recurrently communicate with clients and management across state lines.

25.     Upon information and belief, Defendant, COVENTBRIDGE, grossed or did business in excess of $500,000.00 during the years of 2015, 2016, 2017, and on information and belief, is expected to gross in excess of $500,000.00 in 2018.

### Plaintiff's Work for Defendants

26.     On or about July 17, 2017, Plaintiff received an offer letter from Defendant, COVENTBRIDGE, extending Plaintiff the opportunity to join COVENTBRIDGE as an employee with the designated title of "Field Investigator" in the Florida region, and setting forth COVENTBRIDGE's "expectations" for its conditions of employment.

27.     The offer letter stated that Plaintiff's employment start date would be July 24, 2017.

28.     The offer letter advises Plaintiff that COVENTBRIDGE will undertake close monitoring of Plaintiff's investigative work, results, reporting, billing efficiency and performance, and that regular travel is required for the position.

29.     The offer letter also provides that Plaintiff would be compensated bi-weekly at an hourly rate of $20.00 per "billable hour." Moreover, the offer letter states that this hourly rate also applies to mandatory training, and both administrative work time and travel time "to the extent they are billable to the customer."

30.     The offer letter states that "administrative work" and "travel time" which is not billable to the customer (such as meetings, report writing, etc.) will be payable bi-weekly to Plaintiff at the greater rate of the Federal minimum wage rate or the applicable State/County minimum wage rate.

31.     Plaintiff had no control over Defendants' agreements with its customers regarding compensation for administrative work, including report writing and meetings, or travel time.

32.     Defendants had sole discretion to either bill Plaintiff's time to Coventbridge's customers and pay Plaintiff the agreed to $20.000/hour, or to pay him minimum wage.

## Under-Reporting of Hours

33.     During all time periods material hereto, Defendants implemented and followed a company-wide policy which required (and encouraged) Plaintiff, and other similarly situated individuals, to not accurately and faithfully report the hours they were actually working on a day-to-day basis. On information and belief, Defendants implemented this policy under the auspices of it being a "Billing Efficiency" program.

34.     After accepting his job offer, Plaintiff was required to complete corporate training over the telephone, along with 10-15 other trainees from across the country - all of whom were instructed by a corporate trainer provided by Defendant, COVENTBRIDGE.

35.     According to the Investigator Pay Policy, company mandated training is paid at the "regular hourly rate."

36.     During this corporate training, Plaintiff, and all others similarly situated, were instructed that to ensure "Billing Efficiency" (hereinafter "BE"), employees must not bill more than two (2) minutes of report time for every hour spent doing surveillance work, regardless of how much time is actually spent working on any such report.

37.     Furthermore, CONVENBRIDGE's uniform written Investigator Pay & Expense Policy states that the "[r]eport standards for the purposes of evaluating an investigator's performance are:

      a.   Surveillance: 2 minutes of report time for every hour spent in the field.

38.     Then, following Plaintiff's completion of this corporate training program, Defendant, FRANCIS, who was Plaintiff's direct supervisor, routinely emphasized the importance for employees to not bill more than two (2) minutes of report writing for each hour of surveillance performed, and instructed employees that if they failed to comply with this directive, their rate of pay would be adversely affected.

39.     Based on the pay policy, regardless of whether Plaintiff's report writing was billable to a customer or not, if his BE fell below the expected standard, his wages would be negatively affected based on a discretionary formula set by Defendants.

40.     Plaintiff does not know how many hours, if any, of his administrative, report writing, or travel time, were billable to a customer, or what rate he was paid for those hours billable to the customer.

41.     FRANCIS's instructions and directives to Plaintiff and the class is consistent with CONVENTBRIDGE's uniform "Production Compensation Incentive ("PCI") Program" that states "[w]hen an investigator's BE is under the applicable BE . . . the amount below the minimum adjusts BE downward and reduces an investigator's hourly rate and administrative rate . . . ."

42.     In other words, Plaintiff, and all similarly situated individuals, were and are penalized by Defendants if they do not comply with this policy of underreporting their actual hours spent on report writing, even if the report writing time was billable to Defendants' customers. In fact, CONVENTBRIDGE's PCI program even refers to this practice as a "penalty."

43.     This resulted in a company-wide practice of underreporting employee time.

44.     At a bare minimum, during the eight (8) months of his employment with Defendants, Plaintiff spent at least thirty (30) minutes per day writing reports for Defendants, and on occasion would spend up to 2-3 hours writing a given report.

45.     However, Plaintiff was instructed to submit only two (2) minutes of this report writing time for each hour he spent performing surveillance services.

46.     Any hours displayed in the payroll records kept and/or maintained by Defendants reflect this underreporting of hours.

47.     Accordingly, Plaintiff, and all similarly situated individuals, were not fully compensated for the time spent working for Defendants.

48.     Defendants, COVENTBRIDGE, and MERRIL, endorsed, approved, administered, and ratified this pay policy, which applied to Plaintiff, and similarly situated individuals.

49.     Defendant, FRANCIS, assisted in the implementation and enforcement of this policy through the course of his day-to-day supervision and control of Plaintiff, and other similarly situated individuals.

50.     Moreover, Defendants advised Plaintiff, and similarly situated individuals, that COVENTBRIDGE managers would be permitted to override payroll so that travel time,

administrative work, and other time spent by Plaintiff working to further client relations for the

benefit of Defendants, would not be reported, and therefore, not be compensable.[2]

51.     Accordingly, any time records kept and/or maintained by Defendants do not

accurately reflect the hours actually worked by Plaintiff and similarly situated employees during

their employment.

<u>**Coventbridge's Travel Time Policy**</u>

52. Pursuant to Defendant, COVENTBRIDGE's own policy regarding travel time:

> Travel time is defined as time spent traveling to and from the
> assigned case, or between multiple assignments in the same day.
> Travel time for claims and SIU investigations (including alive and
> well checks and scene inspections) will be paid at the investigator's
> normal hourly rate.  A standard commute deduction will be applied
> to travel time as indicated below.  Travel time for surveillance,
> activity checks is paid at the greater of the Federal or State minimum
> wage for work related travel.  The state minimum wage will be based
> on the employee's state of residence.  The employee's work-related
> travel time for a day will exclude 30 minutes to work and 30 minutes
> from work subject to applicable law.  Such exclusion is to take into
> account a standard commute from the home.  If the employee finds
> that their standard commute from home to work site and work site
> to home is shorter than 30 minutes each way, the employee should
> submit applicable documentation so an appropriate adjustment can
> be considered.  Employees shall report portal to portal time and
> mileage through SmartPartner.

53. Moreover, Defendant, COVENTBRIDGE, explains "hourly rate" as follows:

> Work performed which is not billable to the client (other than Travel
> time), including Administrative work such as training, meetings,
> report writing, etc., is payable at an investigator's Administrative
> Rate described below.

---

2.     The company policy specifically states the following: "CoventBridge may override an
investigator's payroll update to ensure that the BE [Billing Efficiency] calculation is not
improperly affected by some special circumstances…. It should be noted that overrides eliminate
the original time entry reported by the investigator…"

54.     In other words, during all pertinent time periods to his employment with Defendants, Plaintiff's travel time was payable at a rate of $20.00 per hour (after the first 30 minutes).

55.     Furthermore, the offer letter advises Plaintiff that travel time which exceeds ordinary commute time of 30 minutes each way to and from and assignment, will be paid at a rate of $20.00 per hour.

56.     During all time periods pertinent to his employment, Plaintiff was required to significantly underreport (or altogether omit) his travel time to and from work assignments, which amounts to several hours each week of his employment.

## Overtime Policy

57.     Defendant, COVENTBRIDGE, provided Plaintiff, and similarly situated individuals, with a copy of its overtime policy which states as follows:

> Overtime is payable at one and a half times an investigator's applicable rates of pay per hour or per applicable law.  The overtime pay for each period is calculated using a weighted average of an investigator's time worked at each applicable Hourly Rate, Administrative Rate, and Travel Rate during the period, excluding ordinary commute times.  This average is the effective regular pay rate for the period, which is then used to determine pay for overtime hours worked.  Please see the weighted overtime explanation and example included in your offer of employment.

58.     Defendants PCI Program includes the following provision concerning overtime compensation:

> Overtime is payable at one and a half times an investigator's applicable rates of pay per hour (or per California law for investigators in California).  The overtime pay for each period is calculated using a weighted average of an investigator's time worked at the applicable Hourly Rate, Administrative Rate, and Travel Rate during the period, excluding ordinary commute times. This average is the effective regular pay rate for the period, which is then used to determine the additional pay for overtime hours worked.

**Example (non-California)**:

42 hours billable to the client + 5 Travel hours + 2 Administrative hours = 49 total hours worked.

Total regular pay for the period (before overtime calculation): ($16.00 x 42) + ($8.00 x 5) + ($8.00 x 2) = $728.00.

Effective regular pay rate for the period (before overtime calculation): $728.00 / 49 = $14.86

Calculation of additional pay for overtime: $14.86 x .5 x 9 = $66.87.

Total Pay: $728.00 + $66.97 = $794.87.

59.     During all time periods pertinent to Plaintiff's employment, Defendant, COVENTBRIDGE, failed to properly maintain *accurate* time records, required Plaintiff, and similarly situated individuals to underreport their hours, and further failed to properly compensate Plaintiff for travel time at the contracted rate.   Therefore, Plaintiff and all similarly situated individuals are entitled to a proper calculation of wages owed under the FLSA.

60.     Plaintiff performed work for Defendants for a period of eight (8) months from July 24, 2017, through on or about February 23, 2018.

61.     Plaintiff, on behalf of himself and other similarly situated individuals, has retained the undersigned attorneys to protect and exercise his lawful rights under the FLSA and is therefore entitled to recover reasonable attorney's fees and costs to fullest extent permitted by law.

### COUNT I – FEDERAL OVERTIME WAGE VIOLATIONS – *29 U.S.C. § 207*
**(Against All Defendants)**

62.     Plaintiff hereby re-alleges and re-avers Paragraphs 1 through 61, as though set forth fully herein.

63.     Plaintiff alleges this action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b).

64.     Any custom, contract or agreement falling short of the requirements of the FLSA's basic policies cannot be utilized to deprive employees of their statutory rights.  *See, e.g.,* Jewell Ridge Coal Corp. v. Local No. 6167, United Mine Workers of America, 325 U.S. 161, 167 (1945).

65.     By enacting the FLSA, Congress intended to protect certain groups of the population from substandard wages and excessive hours which endangered the national health and well-being and the free flow of goods in interstate commerce.  *See, e.g.,* Brooklyn Savings Bank v. O'Neil, 324 U.S. 697, 706 (1945).

66.     Defendants have engaged in a series of FLSA violations during the course of the past three (3) years.

67.     Each violation by itself constitutes a separate and independent violation of the Fair Labor Standards Act.

68.     During all time periods material hereto, Defendants violated their own company policy by failing to compensate Plaintiff at his hourly rate of $20.00 per hour for travel time.[3]

69.     Rather than comply with their own company policy, Defendants have compensated Plaintiff for travel time in the amount of $8.25 per hour – the applicable minimum wage in the State of Florida – but the amount required under Defendant's pay policy.

70.     Defendants' express failure to compensate Plaintiff in the manner proscribed within its own company policy reveals that Defendants' payroll records do not accurately reflect wages properly paid (and owed) to Plaintiff during the relevant time period.

71.     Defendants further violated the FLSA by regularly requiring and encouraging Plaintiff, and similarly situated individuals, to underreport the actual hours they spent working for Defendants, thus further resulting in unreliable time records.

---

3.     Paystubs within Plaintiff's possession demonstrate Plaintiff was only paid the applicable minimum wage in the State of Florida for **all travel time** during his employment.

72.     Defendants engaged in this pattern of underreporting actual hours worked by Plaintiff, under the auspices of a "Billing Efficiency" program.

73.     Defendants' efforts were implemented, approved, enforced, and furthered by MERRILL, the corporate officer of COVENTBRIDGE, who maintained day-to-day control of the company, and FRANCIS, who was Plaintiff's direct supervisor, and maintained day-to-day control over Plaintiff, his wages, work schedule, and employment status.

74.     Accordingly, any payroll records maintained by Defendants (assuming such records exist) are inaccurate and unreliable.

75.     To the extent that Defendants rely upon a weighted hourly rate for determining Plaintiff's overtime compensation, by virtue of the foregoing, all prior calculations made by Defendants are inaccurate and in violation of federal law.

76.     By way of demonstrative example, for the pay period extending from February 4, 2018, through February 17, 2018, Plaintiff's paystub reveals him to have worked the following hours and to have received compensation at the following rates:

(a) Eighty-three (83) hours at Plaintiff's "regular hourly rate" of $20.00 per hour.

(b) One and forty-seven hundredths of an hour (1.47) at Plaintiff's "applicable minimum wage rate" of $8.25 per hour.

(c) One and thirty hundredths of an hour (1.30) at Plaintiff's "applicable minimum wage rate" of $8.25 per hour.

(d) Twelve hundredths (.12) of an hour at Plaintiff's "applicable minimum wage rate" of $8.25 per hour.

(e) Five and fifteen hundredths of an hour (5.15) at Plaintiff's purported "travel rate" of $8.25 per hour.

(f) Three and seventeen hundredths (3.17) of an hour at an overtime rate determined by Defendants to be $9.43 per hour.

(g) Seven and eighty-seven hundredths (7.87) of an hour at an overtime rate determined by Defendants to be $9.52 per hour.

14

77.     None of these time records accurately reflect the report writing time actually worked by Plaintiff, which exceeded at least thirty (30) minutes each day of each pay period of Plaintiff's employment.

78.     Plaintiff's claim is not limited to this one singular pay period but extends to every single pay period during the eight (8) months of his employment with Defendants.

79.     Moreover, during this particular pay period, Plaintiff's paystub clearly reveals that Plaintiff worked in excess of twenty (20) hours overtime during this two-week span, but as set forth within subsections (e)-(f) above, Plaintiff was only compensated for eleven and four hundredths (11.04) hours of overtime.

80.     Based upon Defendants' miscalculation of Plaintiff's wages during this specific pay period, Plaintiff is owed $103.00 for travel time during this pay period.[4]

81.     However, Defendants failed to keep any accurate record of the actual number of hours Plaintiff worked in *each specific work week*.

82.     Likewise, the paystubs supplied by Defendants fail to reflect or otherwise keep any record of the actual non-overtime compensation Plaintiff earned *each specific work week*. Likewise, based upon information and belief, the BE policy and PCI Program calculations are also based on a 2-week period, not on a weekly basis.

83.     Based upon the foregoing allegations, Defendants willfully and intentionally violated the FLSA or were otherwise reckless and/or indifferent as to their compliance with federal overtime law.  Plaintiff is therefore entitled to liquidated (double) damages.

84.     The foregoing allegations demonstrate that Defendants have inappropriately misapplied the weighted average computation under the federal regulations relative to the FLSA.

---

4.     On information and belief, Defendants have committed similar violations in **every single pay period** during Plaintiff's employment.

85. Pursuant to 29 U.S.C. § 207(g)(3):

> No employer shall be deemed to have violated subsection (a) by employing any employee for a workweek in excess of the maximum workweek applicable to such employee under such subsection if, pursuant to an agreement or understanding arrived at between the employer and the employee before performance of the work, the amount paid to the employee for the number of hours worked by him in such workweek in excess of the maximum workweek applicable to such employee under such subsection… (3) is computed at a rate of not less than one and one-half times the rate established by such agreement or understand as the basic rate to be used in computing overtime compensation thereunder: ***Provided***, **That the rate so established shall be authorized by regulation by the Administrator as being substantially equivalent to the average hourly earnings of the employee, exclusive of overtime premiums, in the particular work over a representative period of time**.

86. Moreover, pursuant to *29 C.F.R. § 778.115*:

> Where an employee in a single workweek works at two or more different types of work for which different non-overtime rates of pay (of not less than the applicable minimum wage) have been established, his regular rate for that week is the weighted average of such rates. **That is, his total earnings (except statutory exclusions) are computed to include his compensation during the workweek from all such rates, and are then divided by the total number of hours worked at all jobs.** Certain statutory exceptions permitting alternative methods of computing overtime pay in such cases are discussed in §§778.400 and 778.415 through 778.421.

*Id.*

87.    Defendants are not entitled to invoke the safe harbor of Section 207(g)(3) above by virtue of the fact that Defendants have inaccurately reported Plaintiff's hours and wages and cannot establish that the rate and formula set forth within their overtime policy is the substantial equivalent to the average rate earned by this Plaintiff.

88.    Plaintiff, and all similarly situated individuals, are entitled to compensation for **all** hours worked at their contracted hourly rate (for Plaintiff, $20/hour) during their employment with Defendants.

89.     Accordingly, Plaintiff is entitled to: (i) time-and-a-half overtime pay for all hours worked in excess of forty (40) per week; (ii) alternatively, half-time overtime pay for all hours worked in excess of forty (40) per week at such applicable rate as to be determined in the course of discovery; and (iii) liquidated damages pursuant to the FLSA.

90.     Plaintiff further seeks interest, costs, and attorneys' fees all pursuant to *29 U.S.C. § 216(b)*.

WHEREFORE, Plaintiff, KYLE EGGNATZ, respectfully requests that this Honorable Court enter judgment in his favor and against Defendants, COVENTBRIDGE (USA) INC. d/b/a COVENTBRIDGE GROUP, DAVID MERRILL, individually, and JIM FRANCIS, individually, and award Plaintiff: (a) double damages for overtime pay under the Fair Labor Standards Act to be paid by the Defendants, jointly and severally; (b) all reasonable attorney's fees and litigation costs as permitted under the FLSA; and any and all such further relief as this Court may deem just and equitable under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiff, KYLE EGGNATZ, requests and demands a trial by jury on all appropriate claims.

Dated this 5th day of June, 2018.

Respectfully Submitted,

**Jordan Richards, PLLC**                    **EGGNATZ |PASCUCCI**
401 East Las Olas Blvd.                       5400 S. University Drive
Suite 1400                                    Suite 417
Fort Lauderdale, Florida 33301                Davie, Florida
Ph: (954) 871-0050                            Ph: (954) 889-3359
*Counsel* for Plaintiff, Kyle Eggnatz         Counsel for Plaintiff, Kyle Eggnatz

By: /s/ Jordan Richards                       By: /s/ Joshua H. Eggnatz
JORDAN RICHARDS, ESQUIRE                       JOSHUA H. EGGNATZ, ESQ.
Florida Bar No. 108372                        Fla. Bar No. 0067926

Jordan@jordanrichardspllc.com
Jordan@flsafirm.com
jake@jordanrichardspllc.com
livia@jordanrichardspllc.com

MICHAEL J. PASCUCCI, ESQ
Fla. Bar. No.: 83397
JEggnatz@JusticeEarned.com
Mpascucci@JusticeEarned.com
SGizzie@JusticeEarned.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that the foregoing document was filed via CM/ECF on this 5th of

June, 2018.

By: */s/ Jordan Richards*
JORDAN RICHARDS, ESQUIRE
Florida Bar No. 108372

## SERVICE LIST: