# SETTLEMENT AGREEMENT, WAIVER AND RELEASE

THIS **SETTLEMENT AGREEMENT, WAIVER AND RELEASE** ("this Agreement") is made and entered into by and between **CoventBridge (USA) Inc. d/b/a CoventBridge Group** ("CoventBridge"), **David Merrill** ("Merrill"), **Jim Francis** ("Francis") (collectively "Defendants") and **Kyle Eggnatz** ("Eggnatz"), **John Gaston** ("Gaston"), **Carlos Rodgers** ("Rodgers"), **and Shawn Gaffney** ("Gaffney") (collectively "Plaintiffs").

Defendants and Plaintiffs, desiring to settle all existing or potential claims Plaintiffs have or may have against Defendants, agree to the following:

1. **Obligations of Defendants.** In consideration of Plaintiffs' obligations set forth below and to avoid any further expenses associated with litigation, within 30 days after the Court approves the Agreement, Defendants shall provide to Plaintiffs' attorneys, Jordan Richards, PLLC and Eggnatz Pascucci the following:

    (a) One check in the amount of $2,567.50 payable to Kyle Eggnatz, as payment for alleged non-wage and/or liquidated damages, for which a Form 1099 shall issue;

    (b) One check in the amount of $4,647.50 payable to John Gaston, as payment for alleged non-wage and/or liquidated damages, for which a Form 1099 shall issue;

    (c) One check in the amount of $2,500.00 payable to Carlos Rodgers, as payment for alleged non-wage and/or liquidated damages, for which a Form 1099 shall issue;

    (d) One check in the amount of $3,120.00 payable to Shawn Gaffney, as payment for alleged non-wage and/or liquidated damages, for which a Form 1099 shall issue;

    (e) One check in the amount of $28,084.37, payable to Jordan Richards PLLC, for Plaintiffs' attorney's fees and costs, for which a Form 1099 shall also issue;

    (f) One check in the amount of $26,245.63, payable to Eggnatz Pascucci, for Plaintiffs' attorney's fees and costs, for which a Form 1099 shall also issue;

    (g) One check in the gross amount of $2,567.50, less legally required withholdings, payable to Kyle Eggnatz for which a Form W-2 shall issue;

    (h) One check in the gross amount of $4,647.50, less legally required

    withholdings, payable to John Gaston for which a Form W-2 shall issue;

(i) One check in the gross amount of $2,500.00, less legally required withholdings, payable to Carlos Rodgers for which a Form W-2 shall issue; and

(j) One check in the gross amount of $3,120.00, less legally required withholdings, payable to Shawn Gaffney for which a Form W-2 shall issue.

Contemporaneously with the execution of this Agreement, Plaintiffs and their attorneys shall each sign and deliver an Internal Revenue Service Forms W-9 Defendants' attorneys in this matter for Defendants to process the checks in Subsections 1(a) through (f) above.

Nothing in this Agreement, however, shall be construed as a representation by Defendants as to proper tax treatment of these settlement monies. Rather, Plaintiffs and their attorneys shall be solely responsible for properly reporting and paying taxes on monies paid, and as to any failure by Plaintiffs to properly pay taxes on the above settlement proceeds which leads to a claim against Defendants, Plaintiffs shall indemnify Defendants for any liability Defendants may incur as a result of such a claim.

  2. **Obligations of Plaintiffs.** In consideration of Defendants' obligations set forth in this Agreement:

  (a) Upon the Court's approval of the Agreement, Plaintiffs, through their attorneys, shall sign and file a stipulation of dismissal with prejudice of all claims brought in *Kyle Eggnatz, and all others similarly situated under 29 U.S.C. 216(b) v. CoventBridge (USA) Inc. d/b/a CoventBridge Group, David Merrill, and Jim Francis*, Case No. 18-cv-61250-RNS, filed in the United States District Court of the Southern District of Florida, Fort Lauderdale Division ("the Lawsuit"). If for any reason the stipulation does not result in the complete dismissal of all of Plaintiffs' claims against Defendants in the Lawsuit with prejudice, Plaintiffs and their attorneys, without any additional consideration, shall cooperate with counsel for Defendants in efforts to obtain a dismissal with prejudice of all of Plaintiffs' claims against Defendants in their entirety.

  (b) Plaintiffs waive, and release Defendants, and their related entities, and their successors, officers, directors, representatives, agents, attorneys, and current and former employees, both individually and collectively (hereinafter collectively referred to as "the Released Parties") of and from, all claims, rights, administrative charges, and causes of action, both known and unknown, in law or in equity, of any kind whatsoever that Plaintiffs have or could have maintained against any of the Released Parties from the beginning of time through the date of signing this Agreement, including any claim which was raised or could have been raised in the

Lawsuit and including any claim for costs and attorneys' fees. Without limiting the generality of the foregoing, Plaintiffs waive, and release all of the Released Parties of and from, all claims, rights, charges and causes of action relating to or arising out of Plaintiffs' employment with, conditions of employment with, compensation by, or separation from employment with, Defendants including any claims, rights, charges or causes of action arising under Title VII of the Civil Rights Act of 1964, as amended; the Civil Rights Acts of 1866 and 1871; the Age Discrimination in Employment Act of 1967, as amended; Executive Order Nos. 11246 and 11478; the Equal Pay Act of 1963, as amended; the Employee Retirement Income Security Act of 1974, as amended; the Rehabilitation Act of 1973, as amended; the Florida Civil Rights Act of 1992, as amended; Florida Statutes §§ 112.3187, 440.205, 448.102, and 448.109; the Americans with Disabilities Act of 1990, as amended; the Family and Medical Leave Act of 1993; the National Labor Relations Act of 1935, as amended; the Fair Labor Standards Act of 1938, as amended; the Occupational Safety and Health Act of 1970, as amended; and the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended; the Genetic Information Nondiscrimination Act, and any other federal or state law or local ordinance, including any suit in tort (including negligence) or contract (whether oral, written or implied), or any other common law or equitable basis of action, except those which cannot lawfully be waived in this manner. If any such claim provides the basis for an action Plaintiffs bring against any of the Released Parties, the liability under such a claim shall be reduced by the value of the consideration set forth in Section 1 above, less $100.00.

(c) While Plaintiffs are not legally prohibited from doing so, Plaintiffs represent that they do not intend to file any charge of discrimination, complaint or other accusatory pleading against any of the Released Parties with any federal, state or local agency and understands that Defendants have reasonably relied on his representation in this Section in agreeing to perform the payment obligations set forth in Section 1 of this Agreement. Plaintiffs further waive any right to recovery based on any charge or lawsuit filed at any time by him or on his behalf. Nothing in this or the preceding subsection shall be construed to waive or release any workers' compensation claim Plaintiff Carlos Rodgers ("Rodgers") has made to date or to waive or release, or compromise or prejudice, any available relief thereunder.

(d) Plaintiffs shall refrain from applying for re-employment (or, in Rodgers' case, reinstatement) with any of the Released Parties at any time in the future.. Notwithstanding, in the event CoventBridge acquires, merges with, or otherwise takes over a company that Plaintiffs are employed by at the time of merger, Plaintiffs shall not be deemed in breach of this provision.

(e) Plaintiffs affirm that no claim released by him as a part of this Agreement involves any illness, injury, incident, or accident in which medical expenses were, or are expected to be, incurred. Accordingly, Plaintiffs affirm that Medicare and Medicaid have no interest in the payment under this Agreement. Nonetheless, if the Centers for Medicare & Medicaid Services ("CMS") (this term includes any related agency representing Medicare's or Medicaid's interests) determines that Medicare or

Medicaid has an interest in the payment to Plaintiffs under this Agreement, Plaintiffs agree to indemnify, defend and hold the Released Parties harmless from any action by CMS relating to medical expenses of Plaintiffs. Plaintiffs shall reasonably cooperate with the Released Parties upon request as to (i) any information needed to satisfy the reporting requirements under Section 111 of the Medicare, Medicaid, and SCHIP Extension Act of 2007, and (ii) any claim that the CMS may make and for which Plaintiffs are required to indemnify the Released Parties under this paragraph. Furthermore, Plaintiffs agree to waive all future actions against the Released Parties for any private cause of action for damages pursuant to 42 U.S.C. § 1395y(b)(3)(A).

(f) With advice of counsel and after discovery was substantially completed in the Lawsuit, Plaintiffs hereby acknowledge that with their receipt of the foregoing amounts, and after weighing the risks of continued litigation, they have reached a fair, reasonable and adequate compromised settlement and will have been fully compensated for hours worked, including overtime work.

(g) The Plaintiffs acknowledge and agree that, during their employment with Defendants, they had access to certain Confidential Information and Trade Secrets concerning the Defendants' business and business activities. For purposes of this section, the term "**Confidential Information**" includes, but is not limited to, the definitions of "Confidential Information" and "Trade Secret" in Plaintiffs' *Confidentiality and Nonsolicitation Agreement* including but not limited to the Defendants' formulas, patterns, devices, secret inventions, processes, compilations of information, records, specifications, files, documents, drawings, equipment, financial data, customer lists, special agreements, marketing information, marketing and/or promotional techniques and methods, pricing information and procedures, purchasing information and procedures, sales policies and procedures, employee lists, office policies and procedure manuals, books and publications, business records, advertising methods and schemes, computer records, computer printouts, "know-how" plans, programs, sources of supplies and inventory, proprietary or confidential research, development, personnel, financial, customer or commercial information, client and customer information including claimant information, and other similar information created, compiled, or owned by the Defendants or their clients. Subsequent to the Effective Date of this Agreement, the Plaintiffs agree not to utilize or disclose any such Confidential Information for any purpose, or to any person, without the written consent of an officer of the Defendants. Furthermore, by signing this Agreement, the Plaintiffs acknowledge that they have returned or otherwise destroyed all documents in their possession containing any Confidential Information, as defined above, and are not in possession of any files, papers, materials, notes, computer records, or documents of any kind containing any Confidential Information, as defined above. The Plaintiffs acknowledge and agree that, in the event of any breach of

this provision, the Defendants will suffer immediate and irreparable harm which cannot adequately be measured or calculated in terms of monetary damages, and that immediate temporary and permanent injunctive relief shall be appropriate, in addition to any other legal or equitable remedies available under applicable law.  Furthermore, in the event that Defendants are the prevailing party in an action alleging any breach of this provision, the Defendants shall be entitled to recover from the Plaintiffs their reasonable expenses, including attorneys' fees incurred in the enforcement of this provision, in addition to any other legal or equitable relief available under applicable law.

(h)     Plaintiffs represent and warrant that they have searched Plaintiffs' residence, vehicles, offices, etc. and have located any and all property belonging to the Defendants. Plaintiffs represent and warrant that they have returned to the Defendants or destroyed all property belonging to the Defendants including, but not limited to the following: all documents belonging to Defendants including but not limited to documents containing claimant and client data, automobile, computers (desktop, laptop, tablet, iPad, etc.), phone, devices (usb, external hard drives, etc.), handheld devises, keys, access cards and passwords, ID cards, etc.

3.    **Non-Admission**.  Neither this Agreement, nor anything contained in it, shall be construed as an admission by any of the Released Parties of any liability, wrongdoing or unlawful conduct whatsoever.

4.    **Non-Disparagement**.  Plaintiffs will refrain from expressing (or causing others to express) to any third party, any disparaging or derogatory remarks or opinions concerning any of the Released Parties.  Plaintiffs agree that this restriction prohibits them from making or engaging in any such disparaging or defamatory remarks and/or conduct to any: (1) member of the general public; (2) contractors, suppliers, vendors, and other entities related to Released Parties; (3) members of the press or other media, including social media; and (4) current or former employees of Released Parties.  To the extent any such postings exist, Plaintiffs shall remove any and all disparaging and derogatory comments or opinions they authored concerning Defendants on social media and other platforms, including but not limited to the website Glassdoor. Likewise, Defendants David Merrill and Jim Francis agree that they will refrain from expressing (or causing others to express) to any third party, any disparaging or derogatory remarks or opinions concerning any of the Plaintiffs. Defendants agree that this restriction prohibits them from making or engaging in any such disparaging or defamatory remarks and/or conduct to any: (1) member of the general public; (2) employers, prospective employers, contractors, suppliers, vendors, and other entities related to Released Parties or Plaintiffs; (3) members of the press or other media, including social media; and (4) current or former employees or co-workers of Released Parties or Plaintiffs. Furthermore, if a Plaintiff's prospective employer contacts CoventBridge's Human Resources Department for a reference , CoventBridge will provide a neutral reference by only informing the prospective employer of the Plaintiff's

job title, dates of employment, and ending pay rate.

5. **Confidentiality.** The parties shall not disclose, either directly or indirectly, any information concerning this Agreement, including, but not limited to, the negotiations for, amount of, or existence of this Agreement or the payments set forth in Section 1 above, to any person or organization, including, but not limited to, members of the press or media, present and former Released Parties' employees and contractors, or any other members of the public. The parties may only disclose the terms of this Agreement in a privileged context (attorney-client, accountant-client or husband-wife) with the understanding that such disclosure will remain privileged and will not be communicated to third parties. If at any time after the execution of this Agreement, either party violates the terms of this confidentiality provision or the non-disparagement obligation above, the non-breaching party shall have the right to seek appropriate relief in a court of competent jurisdiction, including, but not limited to, damages and a permanent injunction restraining the breaching party from further violations. If a party is asked by someone having knowledge of the Lawsuit as to the status, result, or other matters relating to the Lawsuit, that party shall communicate simply that the Lawsuit has been dismissed. The parties acknowledge and understand that CoventBridge has relied upon Plaintiffs' agreements to confidentiality and non-disparagement in agreeing to provide the payments set forth in Section 1. If any Plaintiff receives a subpoena or other legal process seeking disclosure of the existence or terms of this Agreement, Plaintiff shall promptly notify CoventBridge's General Counsel so that CoventBridge may seek to obtain a protective order preventing such disclosure, but in the absence of such a protective order being entered, Plaintiff may make such disclosure without violating this Agreement.

6. **Severability.** If a court of competent jurisdiction invalidates any provision of this Agreement, then all of the remaining provisions of this Agreement shall continue unabated and in full force and effect.

7. **Entire Agreement.** This Agreement contains the entire understanding and agreement between the parties regarding the subject matter of this Agreement and shall not be modified or superseded except upon express written consent of the parties to this Agreement. Plaintiffs represent and acknowledge that in executing this Agreement, they do not rely and has not relied upon any representation or statement made by Defendants' or its agents, representatives or attorneys which is not set forth in this Agreement.

8. **Governing Law and Venue.** The laws of the State of Florida shall govern this Agreement and venue shall be Broward County, Florida.

9. **Agreement Not to be Used as Evidence.** This Agreement shall not be admissible as evidence in any proceeding except one in which a party to this Agreement seeks to enforce this Agreement or alleges this Agreement has been breached.

10. **Opportunity to Consider and Confer.** Plaintiffs acknowledge that they have been given a period of 21 days in which they may, but are not required to, consider this Agreement and that after they sign this Agreement, they have a seven day period immediately thereafter in which they may revoke this Agreement, which revocation must be in writing and delivered to Defendants' attorneys in the Lawsuit before the expiration of the revocation period. Plaintiffs further acknowledge that they fully understand and completely agree with all of the terms of this Agreement and that they has been, and hereby is, specifically advised they should consult with counsel before executing this Agreement.

11. **Jury Trial Waiver.** AS TO ANY DISPUTE BETWEEN PLAINTIFFS AND ANY OF THE RELEASED PARTIES INVOLVING ENFORCEMENT OF THIS AGREEMENT, INCLUDING ENFORCING THE WAIVER AND RELEASE PROVISIONS, OR INVOLVING ANY CLAIM NOT WAIVED AND RELEASED IN THIS AGREEMENT, THE PARTIES TO THIS AGREEMENT WAIVE THE RIGHT TO A JURY TRIAL.

12. **Effective Date.** This Agreement becomes effective upon the later of (a) Defendants' counsel's receipt of this Agreement with Plaintiffs' witnessed and dated signature, or (b) the eighth day following the date Plaintiffs sign this Agreement, if Plaintiffs have not timely revoked this Agreement.

IN WITNESS WHEREOF, and intending to be legally bound hereby, Defendants and Plaintiffs hereby execute this Settlement Agreement, Waiver and Release, consisting of eight (8) pages (which includes the signature page and including twelve (12) enumerated sections) by signing below voluntarily and with full knowledge of the significance of all of its provisions.

**PLEASE READ CAREFULLY. THIS CONFIDENTIAL SETTLEMENT AGREEMENT, WAIVER AND RELEASE INCLUDES A RELEASE OF ALL KNOWN AND UNKNOWN CLAIMS.**

_____    _____
Witness as to Kyle Eggnatz         Kyle Eggnatz

                                   Date: 4/4/19

_____    _____
Witness as to John Gaston          John Gaston

                                   Date:_____

_____    _____
Witness as to Carlos Rodgers       Carlos Rodgers

10. **Opportunity to Consider and Confer.** Plaintiffs acknowledge that they have been given a period of 21 days in which they may, but are not required to, consider this Agreement and that after they sign this Agreement, they have a seven day period immediately thereafter in which they may revoke this Agreement, which revocation must be in writing and delivered to Defendants' attorneys in the Lawsuit before the expiration of the revocation period. Plaintiffs further acknowledge that they fully understand and completely agree with all of the terms of this Agreement and that they has been, and hereby is, specifically advised they should consult with counsel before executing this Agreement.

11. **Jury Trial Waiver.** AS TO ANY DISPUTE BETWEEN PLAINTIFFS AND ANY OF THE RELEASED PARTIES INVOLVING ENFORCEMENT OF THIS AGREEMENT, INCLUDING ENFORCING THE WAIVER AND RELEASE PROVISIONS, OR INVOLVING ANY CLAIM NOT WAIVED AND RELEASED IN THIS AGREEMENT, THE PARTIES TO THIS AGREEMENT WAIVE THE RIGHT TO A JURY TRIAL.

12. **Effective Date.** This Agreement becomes effective upon the later of (a) Defendants' counsel's receipt of this Agreement with Plaintiffs' witnessed and dated signature, or (b) the eighth day following the date Plaintiffs sign this Agreement, if Plaintiffs have not timely revoked this Agreement.

IN WITNESS WHEREOF, and intending to be legally bound hereby, Defendants and Plaintiffs hereby execute this Settlement Agreement, Waiver and Release, consisting of eight (8) pages (which includes the signature page and including twelve (12) enumerated sections) by signing below voluntarily and with full knowledge of the significance of all of its provisions.

**PLEASE READ CAREFULLY. THIS CONFIDENTIAL SETTLEMENT AGREEMENT, WAIVER AND RELEASE INCLUDES A RELEASE OF ALL KNOWN AND UNKNOWN CLAIMS.**

| | |
|---|---|
| _____ | _____ |
| Witness as to Kyle Eggnatz | Kyle Eggnatz |
| | Date: _____ |
| *Althea Jones* | _____ |
| Witness as to John Gaston | John Gaston |
| | Date: 4-5-19 |
| _____ | _____ |
| Witness as to Carlos Rodgers | Carlos Rodgers |

Page 7 of 8

10. **Opportunity to Consider and Confer.** Plaintiffs acknowledge that they have been given a period of 21 days in which they may, but are not required to, consider this Agreement and that after they sign this Agreement, they have a seven day period immediately thereafter in which they may revoke this Agreement, which revocation must be in writing and delivered to Defendants' attorneys in the Lawsuit before the expiration of the revocation period. Plaintiffs further acknowledge that they fully understand and completely agree with all of the terms of this Agreement and that they has been, and hereby is, specifically advised they should consult with counsel before executing this Agreement.

11. **Jury Trial Waiver**. **AS TO ANY DISPUTE BETWEEN PLAINTIFFS AND ANY OF THE RELEASED PARTIES INVOLVING ENFORCEMENT OF THIS AGREEMENT, INCLUDING ENFORCING THE WAIVER AND RELEASE PROVISIONS, OR INVOLVING ANY CLAIM NOT WAIVED AND RELEASED IN THIS AGREEMENT, THE PARTIES TO THIS AGREEMENT WAIVE THE RIGHT TO A JURY TRIAL.**

12. **Effective Date.** This Agreement becomes effective upon the later of (a) Defendants' counsel's receipt of this Agreement with Plaintiffs' witnessed and dated signature, or (b) the eighth day following the date Plaintiffs sign this Agreement, if Plaintiffs have not timely revoked this Agreement.

IN WITNESS WHEREOF, and intending to be legally bound hereby, Defendants and Plaintiffs hereby execute this Settlement Agreement, Waiver and Release, consisting of eight (8) pages (which includes the signature page and including twelve (12) enumerated sections) by signing below voluntarily and with full knowledge of the significance of all of its provisions.

**PLEASE READ CAREFULLY. THIS CONFIDENTIAL SETTLEMENT AGREEMENT, WAIVER AND RELEASE INCLUDES A RELEASE OF ALL KNOWN AND UNKNOWN CLAIMS.**

| | |
|---|---|
| Witness as to Kyle Eggnatz | Kyle Eggnatz |
| | Date: |
| Witness as to John Gaston | John Gaston |
| | Date: 4-10-19 |
| *[signature]* | *[signature]* |
| Witness as to Carlos Rodgers | Carlos Rodgers |

| | |
|---|---|
| *[signature]* | Date:_____ |
| _____ | *[signature]* |
| Witness as to Shawn Gaffney | Shawn Gaffney |
| | Date: 4-4-2019 |
| _____ | By:_____ |
| Witness as to CoventBridge | For CoventBridge |
| | Date:_____ |
| _____ | _____ |
| Witness as to David Merrill | David Merrill |
| | Date:_____ |
| _____ | _____ |
| Witness as to Jim Francis | Jim Francis |
| | Date:_____ |

Date:_____

_____                      _____
Witness as to Shawn Gaffney                    Shawn Gaffney

                                               Date:_____

_____                      By: _____
Witness as to CoventBridge                     For CoventBridge

                                               Date: 4/11/2019

_____                      _____
Witness as to David Merrill                    David Merrill

                                               Date: 4/11/2019

_____                      _____
Witness as to Jim Francis                      Jim Francis

                                               Date: 4/11/2019